**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MALIBU MEDIA, LLC, )
)
    Plaintiff, )
v. ) Civil Action No.
) 8:14-cv-02138-VMC-MAP
WILLIAM SHARP, )
)
    Defendant. )
_____ )

**DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF**
**FOR SPOLIATION OF EVIDENCE, BAD FAITH, AND/OR**
**FAILURE TO SUPPLEMENT DISCOVERY**

COMES NOW, Defendant, WILLIAM SHARP, by and through his undersigned counsel, pursuant Rule 26(c)(1) and (e)(1), and the inherent power of the Court as stated in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-51, (1991)), and files this Motion for Sanctions against Plaintiff for Spoliation of Evidence, bad faith, and failure to supplement discovery.

**I.    Introduction**

Plaintiff has repeatedly euphemistically described a certain list of allegedly downloaded files, all third-party works not at issue in the litigation, as "additional evidence" to support its assumption that Defendant is a "persistent BitTorrent user." Plaintiff has suggested that many of the titles to the third-party works — 6181 in all —

may be relevant to proving Defendant is the downloader because they might correlate to Defendant's alleged hobbies, profession, or other interests.[1]

In its original complaint, Plaintiff made the seemingly off-hand allegation that "IPP's software logged . . . IP address [96.252.235.193] being used to distribute third-party files through BitTorrent." (Doc. 1 at 5 ¶ 25). Plaintiff also referenced this "additional evidence" in a declaration by Tobias Feiser, stating: "The Additional Evidence indicates that a person using . . . IP address [96.252.235.193] engaged in BitTorrent transactions associated with 5554 files[2] between 01/17/2014 and 08/08/2014." (Doc. 5-4 at 3 ¶ 17.)

On May 26, 2015, in his first request for production of documents, Defendant asked Plaintiff for "[a] true and correct copy of each and every file listed on any 'expanded surveillance' or 'additional evidence' list that your investigator downloaded as part of its surveillance."

---

[1] During Plaintiff's deposition of Defendant, taken September 30, 2014, Plaintiff focused most of its questioning not on its own Works but rather about whether Defendant had ever viewed movies and television shows listed in the "additional evidence," or whether read the eBooks therein, or used the software therein.

[2] The more recent list of "additional evidence" is longer (6181 rather than 5554) probably because Plaintiff's "expanded surveillance" allegedly continued after the filing of the complaint and Feiser's declaration, and through to about November 2014.

1    In Plaintiff's response, served July 7, 2015, Plaintiff
2  said it was "not in possession, custody, or control of any
3  documents responsive to this request because neither IPP nor
4  Excipio 'downloaded' the third-party works listed on the
5  additional evidence." **Exhibit "1"** at 10 (Response to No. 26).
6  Plaintiff served no copies of the alleged files.
7    On July 31, 2015, Plaintiff served a report from its
8  proposed expert Michael Patzer. **Exhibit "2."**[3]
9    In this report, Patzer also mentioned, and attached, the
10  list of "additional evidence" titles but, in direct
11  contradiction to Plaintiff's above-quoted response, said that

---

[3] The exhibits to Patzer's declaration are not attached to Exhibit "1" but can be filed if necessary.  Its Exhibit "B" is an excel spreadsheet of the 6181 titles, organized with columns for "IP address," Title ("Torrent name"), File Size, and Date. By way of example, the 6181 titles include:

> Robert Plant 2011-06-21 FM Master; *Harakiri* (2012); Beck - *Morning Phase* (2014) [24 bit FLAC] 180g vinyl; Pitbull Feat Christina Aguilera - *Feel This Moment* {2013-Single}; Jimmy Buffett - 1976 - *Havana Daydreamin*'; Katy Perry - *PRISM* (Deluxe) {2013-Album}; *Calculus Concepts and Contexts* - James Stewart; *ART news* - December 2013; *GQ Männermagazin* - November 2013.rar; R. L. Stine - *Fear Street* - Pruefungsangst.rar; ADOBE PHOTOSHOP CS6 EXTENDED EDITION; Secrets of Wifi Hacking; Wifi Password Cracker v4.6.2 (NEW); Abbyy Finereader 11 0 102 5; 83 Corporate Edition 2011 Pc; WIFI HACKED PERFECTLY Updated Version 100% Working; Business Plan Pro 15th Anniversary Edition; *Footloose* 2011 DVDRip XviD; and *Sons of Anarchy* Season 6 Episode 08, Los Fantasmas HDTV XviD-ASAP [FR].

Exhibit "A" to Patzer's declaration is not relevant to this motion.

Excipio's "servers locate the third-party torrent files" then "download the torrent files." (Exh. 2 at 6 ¶ 30.)

These contradictory assertions by Plaintiff and Patzer indicate Plaintiff is guilty of either spoliation, bad faith, and/or failing to supplement discovery responses.

## II. Analysis

By either (a) deleting potentially relevant evidence or (b) lying about whether such evidence ever existed, then continuing to use reference to said evidence against Defendant, Plaintiff has unfairly hampered the presentation of Defendant's defenses and is guilty of spoliation, bad faith, and/or violation of Fed. R. Civ. P. 26(e)(1).

### A. Spoliation

"Spoliation is the intentional destruction, mutiliation, alteration, or concealment of evidence." *Floeter v. City of Orlando*, 605CV-400-ORL-22KRS, 2007 WL 486633, at *5 (M.D. Fla. 2007). "Generally spoliation is established when the party seeking sanctions proves that (1) the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and, (3) the evidence was crucial to the movant being able to prove its prima facie case or defense." *St. Cyr v. Flying J Inc.*, 3:06-CV-13-33TEM, 2007 WL 1716365, at *3 (M.D. Fla. 2007) (citations omitted).

First, as unequivocally stated by Plaintiff's expert Michael Patzer, the third-party files that make up the Additional Evidence existed at one time:

> 30. **Excipio's infringement detection system uses servers** which are programmed to crawl popular torrent websites. In the process, **the servers locate third party torrent files. The servers subsequently download the torrent files from these websites.** Similar to BitTorrent clients, Excipio's system uses a DHT to obtain the IP Addresses of peers registered to each torrent file. After locating the peers, Excipio's system requests a list of all the registered peers within the swarm. All responses are saved in a database. This includes the IP addresses, dates, hash values, and file names corresponding to the torrent-files.
>
> 31. The results of a search within the database for Defendant's IP address are attached hereto as Exhibit "B." The database records show Defendant's IP address was a registered peer within the swarms for each of the third party works listed on Exhibit B.

Exh. 2 at 6 ¶ 30 (emphasis added). The declaration's Exhibit B is an excel spreadsheet listing the additional evidence.

Secondly, Plaintiff had a duty to preserve the evidence. "[A] litigant 'is under a duty to preserve what it knows, or reasonably should know, is relevant [to litigation or potential litigation] . . . .'" *St. Cyr v. Flying J Inc.*,

3:06-CV-13-33TEM, 2007 WL 1716365, at *3 (M.D. Fla. 2007) (citations omitted). "Thus, the duty to preserve evidence may arise prior to commencement of litigation." *Id.* Plaintiff began filing these copyright infringement cases in February 8, 2012[4], and has since filed at least 4820 such cases against alleged BitTorrent users.[5] In order to bring the copyright infringement lawsuits, Plaintiff uses German companies IPP International and Excipio[6] to uncover alleged instances of Plaintiff's works being downloaded via BitTorrent. Plaintiff also uses these German companies, as well as Patzer, who allegedly created the Torrent tracking software, to uncover "additional evidence" in these cases. Plaintiff has been gathering evidence of and referring to the "additional evidence" — third-party BitTorrent files — in its various cases since at least 2013. *E.g.*, Amended Complaint, Exhibit "C," in *Malibu Media LLC v. Doe*, Case 8:13-cv-00471-JSM-EAJ (M.D. Fla. Apr. 23, 2013) [Doc. 6-3, PageID 127-36]. Therefore, Plaintiff has been aware of the relevance of this "additional evidence" or "expanded surveillance" to prove or

---

[4] Case Nos. 2:12-cv-00664, 2:12-cv-00665, 2:12-cv-00665, 2:12-cv-00667, and 2:12-cv-00668

[5] Pacer.gov (last check Sept. 29, 2015).

[6] According to Plaintiff's allegations, IPP leases the Torrent tracking software from Excipio; however, both companies appear to be closely related and both are in Germany.

disprove Defendant's liability since before the instant case was even filed. As such, Plaintiff uncovered the additional evidence in anticipation for litigation knowing that this evidence was relevant, and as such had a duty to preserve copies of the third-party files downloaded by IPP/Excipio.

Thirdly, the actual file is crucial to proving Defendant's defense that he is not the party who downloaded Plaintiff's works. As alleged in Plaintiff's complaint:

> IPP's software also logged Defendant's IP address being used to distribute third party files through BitTorrent. This evidence indicates that Defendant engaged in BitTorrent transactions associated with 5554 files between 01/17/2014 and 08/08/2014. Collectively, this evidence is referred as the "Additional Evidence."
>
> Plaintiff has the Additional Evidence on a document and can produce it.
>
> The Additional Evidence demonstrates that Defendant is a persistent BitTorrent user.
>
> Many of the titles to the third party works may also be relevant to proving Defendant is the infringer because they correlate to the Defendant's hobbies, profession, or other interests.

Doc. 1, ¶¶ 25-27.

Plaintiff has made the "additional evidence" a major component of its case, alleging that the "additional evidence" proves that Defendant willfully downloaded Plaintiff's films "within the meaning of 17 U.S.C. § 504(c)(2)." Doc. 40 at 3-4.

Plaintiff itself has stated that this alleged evidence of additional downloads "is highly relevant to both Plaintiff's claims and Defendant's defenses." *Id.* To defend against these allegations, Defendant must demonstrate that he did not download the files on his computers. Additionally, without seeing the actual files, Defendant cannot demonstrate the accuracy of the list of additional evidence. As such, this evidence is crucial to Defendant proving his defense.

Lastly, where the absence of that evidence is predicated on bad faith, sanctions for spoliation are appropriate. *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009) (finding bad faith where Defendant failed to ensure that evidence would be preserved by its employees). Similar to *Swofford*, "this is not a circumstance of inadvertent destruction of evidence or negligence in the loss of material data . . . . Rather, it is a case of knowing and willful disregard for the clear obligation to preserve evidence . . ." *Id.* at 1282. This was information that was sonly within the possession of Plaintiff's agent, and Plaintiff failed to require and monitor its preservation, even though Plaintiff finds it clearly central to Plaintiff's case and Defendant's defense. As such, bad faith is clear and sanctions are warranted.

**B.   Bad Faith**

"*Qantum Communc'ns Corp. v. Star Broadcasting, Inc.*, 473 F.Supp.2d 1249 (S.D. Fla. 2007), concisely articulates the appropriate standard for the Court to utilize its inherent power to sanction a party." *Scipione v. Advance Stores Co., Inc.*, 294 F.R.D. 659, 664 (M.D. Fla. 2013). "The United States Supreme Court has held that in addition to the sanctions provisions in the Federal Rules of Civil Procedure and federal statutes, federal courts possess the inherent power to sanction parties and attorneys who conduct litigation in bad faith or who perpetrate fraud on the court." *Qantum Communc'ns*, 473 F. Supp. 2d at 1268 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-51 (1991)).

> [T]he inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence... [T]he Eleventh Circuit has explained that "false statements alone do not indicate bad faith," however, the Eleventh Circuit further explained . . . that "[a] false statement can be evidence of bad faith, if, for instance, there is other evidence in the record indicating that the statement was made for a harassing or frivolous purpose." Furthermore, several federal courts have held that the need for sanctions is heightened when the misconduct relates to the pivotal or "linchpin" issue in the case.

*Qantum Communc'ns*, 473 F. Supp. 2d at 1269.[7]

As stated above, on May 26, 2015, Defendant directly asked Plaintiff for "a true and correct copy of each and every file listed on any 'expanded surveillance' or 'additional evidence' list that your investigator downloaded as part of its surveillance." In response, Plaintiff emphatically said it did not have those files "because **neither IPP nor Excipio 'downloaded' the third-party works** listed on the additional evidence." **Exhibit "1"** at 10, #26 (emphasis added). Subsequently, Michael Patzer, Plaintiff's own proposed expert stated, under penalty of perjury, that Excipio did indeed "download the [third-party] torrent files." (Exh. 2 at 6 ¶ 30.)  Therefore, because Plaintiff's witness has indeed confirmed that the files had been downloaded, Plaintiff must have lied in its response to Request No. 26 when asked for copies of the files. Either Plaintiff is concealing this evidence or Plaintiff has destroyed or failed to preserve —

---

[7] Citing *Vargas v. Peltz*, 901 F.Supp. 1572, 1581-82 (S.D. Fla. 1995) (dismissing a suit when it was revealed the plaintiff had fabricated evidence and lied at a deposition) and *Chemtall, Inc. v. Citi-Chem*, Inc., 992 F.Supp. 1390, 1410 (S.D. Ga. 1998) (finding by clear and convincing evidence that defendant had engaged in abusive conduct, including lying under oath, and finding that a lesser sanction would not suffice); quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001) *abrogated on other grounds as recognized by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1151 (11th Cir. 2011); and citing *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1049 (8th Cir. 1991)).

1  *i.e.*, "spoliated"[8] — same.  In either scenario, Defendant has
2  been enormously prejudiced because he is unable to verify the
3  files in question to determine whether they are what Plaintiff
4  purports them to be or that they are even files Defendant
5  downloaded.
6      Plaintiff's motive in concealing its downloading of the
7  6181 files of "additional evidence" may be that it does not
8  want to admit that its own agent was in fact committing
9  copyright infringement.  In discovery, Defendant asked
10 Plaintiff for documents showing "a license or permission for
11 you or your investigator to make a copy of or download the
12 files listed your 'Expanded surveillance' or 'Additional
13 evidence' list." Exhibit "1" at 10, #27.  Plaintiff responded:
14 "None exist. Neither IPP nor Excipio downloaded or uploaded
15 any content with respect to the third-party works listed on
16 the additional evidence."  Indeed, if Plaintiff had violated
17 the copyrights of third parties by downloading their content
18 via BitTorrent without a license, it would not just be a
19 matter of "the pot calling the kettle black" but potentially

---

[8] "Spoliation is defined as 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Atl. Sea Co., S.A. v. Anais Worldwide Shipping, Inc.*, 08-23079-CIV-BROWN, 2010 WL 2346665, at *2 n. 1 (S.D. Fla. 2010) (quoting *Zubulake v. UBS Warburg, LLC,* 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999))).

subject Plaintiff itself to civil litigation from the owners of the thousands of third-party files — or other penalties. While some files, such as software "Wifi Password Cracker v4.6.2" is likely to be "freeware," files such as, for example, "Abbyy FineReader" are most certainly not.[9]

In summary, as discussed above, Plaintiff considers this "additional evidence" the linchpin to proving willfulness in Plaintiff's case.  Because Plaintiff lied about or concealed the additional evidence files, and these files concern a matter that is central to Plaintiff's case, especially given Plaintiff's motive to avoid litigation from third parties or other penalties, bad faith is demonstrated and sanctions are appropriate.

### C. Failure to supplement discovery pursuant to Rule 26(e)(1)

"A party has an affirmative obligation to supplement its discovery responses." *Scipione v. Advance Stores Co., Inc.*, 294 F.R.D. 659, 664 (M.D. Fla. 2013).  Rule 26(e)(1) states,

> A party who has responded to a[] request for production . . . must supplement or correct its disclosure or response[ ] . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or

---

[9] Abbyy FineReader is scanning software that can be purchased for $118.99 at http://www.abbyy.com; it is not freeware.

> incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . .

A party that fails to supplement its discovery responses may be subject to sanctions. *Scipione*, 294 F.R.D. at 664. Pursuant to Fed. R. Civ. P. 37(c):

> If a party fails to provide information . . . as required by Rule 26(a) or (e), . . . the court . . . (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

In response to Defendant's request for the third-party files listed in Plaintiff's additional evidence, Plaintiff stated: **"neither IPP nor Excipio 'downloaded' the third-party works** listed on the additional evidence." Exh. 1. As Patzer (of Excipio) has admitted that IPP or Excipio did in fact download these files, Plaintiff had a duty to update its response by providing the files or indicating that they have subsequently been deleted. However, Plaintiff failed to provide any update or any files.

**D.   Sanctions**

In fashioning a remedy for spoliation, bad faith, or failure to supplement discovery, the Court has broad discretion. *Swofford*, 671 F. Supp. 2d at 1280 ("when fashioning a remedy for spoliation, the Court has broad discretion in its determination"); *Qantum Communc'ns*, 473 F. Supp. at 1268 ("federal courts possess the inherent power to sanction parties and attorneys who conduct litigation in bad faith or who perpetrate fraud on the court"); *Scipione, Inc.*, 294 F.R.D. at 664 ("the Court maintains broad authority in sanctioning a party pursuant to Rule 37(b)(2)"). As Plaintiff cannot provide Defendant with key evidence necessary to disprove the authenticity of the "additional evidence" or to disprove that these "additional evidence" files exist on Defendant's computer, the Plaintiff should be sanctioned by not being allowed to use the evidence.

Additionally, this Court may order payment of the reasonable expenses, including attorney's fees, caused by the failure of Plaintiff to supplement its discovery responses. As such, Defendant requests this Court award Defendant its attorney fees in drafting this motion for sanctions.

### III. Conclusion

As demonstrated above, Plaintiff stated unambiguously in its response to Defendant's request for production that **"neither IPP nor Excipio 'downloaded' the third-party works** listed on the additional evidence." However, subsequent discovery uncovered that Excipio or IPP had in fact downloaded the third party works listed in Plaintiff's "additional evidence." These circumstances demonstrate that Plaintiff is either concealing evidence, spoliated evidence, has acted in bad faith in lying in its discovery responses on a matter that is central to its case, or failed to supplement its discovery response. As such, this Court should impose sanctions against Plaintiff by excluding Plaintiff's "additional evidence" as evidence in this case.

WHEREFORE, Defendant, respectfully moves this Court for the entry of sanctions against Plaintiff excluding Plaintiff's ability to use the "additional evidence."

### RULE 3.01(g) CERTIFICATE OF GOOD-FAITH CONFERENCE

I, the undersigned attorney, hereby certify that, at the time of filing this motion, I was unable to confer with counsel for Plaintiff due to it being after hours. Therefore, pursuant to the local rules, I will "expeditiously" contact

counsel for Plaintiff and, upon such conferring, "supplement the motion promptly with a statement certifying whether or to what extent the parties have resolved the issue(s) presented in the motion." *See, e.g.*, *Maronda Homes, Inc. of Fla. v. Progressive Express Ins. Co.*, 6:14-CV-1287-ORL-31, 2015 WL 77986, at *3 (M.D. Fla. 2015) (citing Local Rule 3.01(g)).

*Attorney for Defendant:*

/s/ Cynthia Conlin
CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012

**ATTORNEY'S CERTIFICATE OF SERVICE**

I hereby certify that on **September 30, 2015**, I filed electronically the foregoing with the Clerk of the Court via CM/ECF system which will notify electronically all parties.

*Attorney for Defendant:*

**Cynthia Conlin, P.A.**
1643 Hillcrest Street
Orlando, FL 32803-4809
Tel. 405-965-5519
Fax 405-545-4395
www.conlinpa.com

/s/ Cynthia Conlin, Esq.
CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012
Cynthia@cynthiaconlin.com
JENNIFER REED, ESQ.
Florida Bar No. 104986
Jennifer@cynthiaconlin.com
Secondary Email for Service:
Jeff@cynthiaconlin.com